UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE: )
3D Resorts-Bluegrass, LLC, ) Case No. 11-41599-ACS
                  Debtor )
) Chapter 11
_____ )

### MEMORANDUM

The above-styled case comes before the Court on the Chapter 11 Trustee's Motion for Approval of Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Settlement Motion") filed by Thomas M. Duddy ("Trustee"), Chapter 11 Trustee for 3D Resorts-Bluegrass, LLC ("Debtor"). In the Settlement Motion, the Trustee seeks approval of a compromise between himself, PlainsCapital Bank "PCB", PCB-ARC, Inc. ("ARC"), the Attorney General for the Commonwealth of Kentucky ("KYOAG"), and the Consumer Financial Protection Bureau (the "CFPB") (collectively, the "Parties"). The Parties seek an Order approving the settlement and compromise of certain claims and actions as set forth in Settlement Agreement and Release (the "Settlement Agreement"), which is incorporated herein by reference. The Green Farm Property Owners' Association ("POA") objected to the Settlement Agreement. As discussed more fully below, the Court will approve the Settlement Agreement.

### I. Factual Background

1. On November 16, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

2. On December 8, 2011, the Debtor's case was subsequently transferred to this Court. (Doc.

No. 1).

3. This Court entered an order on January 11, 2012 granting the United States Trustee's application to appoint Thomas Duddy as the Chapter 11 Trustee. (See Doc. No. 43).

4. On May 11, 2012, the Trustee filed the Motion to Approve Agreed Order (i) Authorizing Trustee to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 363 and 364; (ii) Granting Liens and Superpriority Claims to Plains Pursuant to 11 U.S.C. § 364; (iii) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363; and (iv) Providing Adequate Protection to Plains Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 (Doc. No. 72) (the "Financing Motion"). The Financing Motion sought Court approval of, inter alia, the Debtor's use of PCB's cash collateral up to, and through, July 31, 2012.

5. On July 27, 2012, this Court entered the Agreed Order Remanding Hearings, Authorizing Appointment of Mediator, and Extending Agreed Order for Use of Cash Collateral (the "Agreed Cash Collateral Order"). (See Doc. Nos. 158 and 162). The Agreed Cash Collateral Order extended the Trustee's authorization to use PCB's cash collateral up to and through August 31, 2012.

6. Pursuant to the Agreed Cash Collateral Order, PCB received replacement security interests and liens in all of the Debtor's assets (excluding chapter 5 causes of action). (See Doc. No. 158 at p.6). PCB was also granted superpriority claims against the Debtor's estate pursuant to section 507(b) of the Bankruptcy Code.

7. On June 14, 2013, the CFPB commenced an administrative proceeding against the Debtor by filing a Notice of Charges Seeking Rescission, Restitution, Civil Money Penalties, and Other Legal and Equitable Relief (the "Administrative Proceeding").

8. On June 17, 2011, the KYOAG filed a civil lawsuit in Grayson Circuit Court against four (4) entities, including the Debtor. While that action was stayed by the commencement of this bankruptcy case, on July 31, 2013, the KYOAG obtained stay relief to permit the KYOAG to prosecute its civil enforcement action(s). The Franklin Circuit action is still pending.

9. On June 17, 2013, the Trustee and PCB filed their Joint Motion for Approval of Agreement Pursuant to Bankruptcy Rule 4001(d) (Doc. No. 266) (the "4001(d) Motion").

10. Through the 4001(d) Motion, the Trustee and PCB agreed to grant PCB relief from the automatic stay of the Bankruptcy Code to foreclose on the Debtor's interest in certain promissory notes and related mortgages (the "3D Mortgages").

11. Also on June 17, 2013, the Trustee filed his Motion for Order Pursuant to 11 U.S.C. §§ 105 and 363 and Bankruptcy Rules 2002 and 6004 Approving Sale of Certain Assets of the Debtor (Doc. No. 262) (the "363 Motion"). Through the 363 Motion, the Trustee seeks to sell the Debtor's interest in the Assets (as defined in the 363 Motion) to PCB. On August 30, 2013, this Court received competing orders on the 363 Motion and on September 4, 2013, this Court took the 363 Motion (and the competing orders) under advisement.

12. Through the relief requested in the 363 Motion, PCB will provide a fund for distribution to unsecured creditors – including the distributions contemplated in the Settlement Agreement to the KYOAG and the CFPB.

13. On July 17, 2013, the 4001(d) Motion was approved by the Bankruptcy Court and PCB was granted relief from the automatic stay in the Bankruptcy Case to take all necessary actions and enforce its rights against the 3D Mortgages held by PCB as collateral. The CFPB

appealed the order approving the 4001(d) Motion (the "CFPB Appeal"). This appeal is still pending.

14. On July 18, 2013, PCB conducted a Uniform Commercial Code foreclosure sale of the 3D Mortgages and related notes. As a result of that sale, PCB-ARC, Inc. ("ARC") owns the 3D Mortgages and notes.

15. The Administrative Proceeding is currently pending before an administrative law judge (the "ALJ").

16. On October 4, 2013, the Trustee filed the Settlement Motion, which was noticed out to all creditors on October 7, 2013. As stated above, only the POA objected to the Settlement Motion.

17. Some of the terms of the Settlement Agreement include:

   a. The Parties provide various broad-form releases among the respective Parties;

   b. PCB will release all claims against the Debtor, including its super priority administrative claim;

   c. The CFPB will dismiss the Administrative Proceeding and the KYOAG will dismiss the Grayson County state-court lawsuit as to the Debtor;

   d. The KYOAG and the CFPB shall each have an allowed unsecured claim in the amount of $500,000.00, and will receive distributions pursuant to the Bankruptcy Code and Bankruptcy Rules until such time as $50,000.00 of distributions have been made on account of each such claim, at which point no more distributions will be made;

   e. The Trustee will pay the KYOAG and the CFPB each $50,000.00 in cash, using

    funds provided by PCB;

 f. The KYOAG will retain all funds ( approximately $29,521.12) currently held in escrow from the 2008 settlement entered into with the Debtor;

 g. ARC and PCB will offer certain settlement agreements to Lot Owners (as defined in the Settlement Agreement) and pursuant to the terms set forth in the Settlement Agreement;

 h. The Trustee will withdraw his objection to the CFPB's proof of claim(Doc. 233); and

 i. The CFPB will dismiss the CFPB Appeal, and the KYOAG and the CFPB will withdraw their objections to the 363 Motion.

18. The Trustee contends that given the claims of various Lot Owners in this case, the outstanding litigation maintained by the KYOAG, and the Administrative Proceeding going to trial in several weeks, the Settlement Agreement represents a resolution to substantially all of the major issues in the Debtor's case.

19. Additionally, the Trustee argues that through the Settlement Agreement, coupled with the relief requested in the 363 Motion, the unsecured creditors, including the CFPB and the KYOAG, will receive a distribution. Thus, the Agreement constitutes an exercise of reasonable business judgment on behalf of the Trustee.

20. The POA objected to the motion. Some of the grounds for the objection include:

 a. The POA contends the terms of the Settlement Agreement are not "a good deal for the Estate." It argues no settlement funds are allocated to the failed infrastructure or amenities at the development or are otherwise designated to reach the consumers. The POA argues that those funds will instead simply go to Washington and

        Frankfort. The Court is unsure how the POA draws this conclusion. At the hearing on the Settlement Motion, neither the KYOAG nor the CFPB could definitively state where the funds would eventually go.

b.    The POA also argues the Settlement Agreement proposes relief for some Lot Owners, but not relief to all Lot Owners.

c.    The POA also takes issue with the fact that the Settlement Agreement is silent as to the rights of remaining Lot Owners to use the golf course.

d.    The Settlement Agreement proposes for PCB to retain funds that are attributable to POA dues. Moreover, the Settlement Agreement would run afoul of the real property covenants and deprive the POA of money that, to the extent it is paid to anyone from the aggrieved consumer lot owners, should be paid to the POA for the lot owners' benefit. The POA contends that any agreement providing otherwise would violate those covenants.

e.    The POA also incorporates its objection to the first settlement motion (Doc. 264), which the Trustee later withdrew.

f.    Finally, the POA challenges the Trustee's good faith in pursuing the Settlement Agreement, without meaningfully pursuing a settlement with the POA.

21.    The United States Trustee's Office ("UST") did not object to the Settlement Agreement and supported approval of the Settlement Motion.

22.    At the hearing on the Settlement Motion, all the parties waived an evidentiary hearing, and agreed the Court could decide the merits of the motion via a proffer from the Trustee.

23.    In his proffer of sworn testimony, the Trustee indicates that he believes the Settlement

Agreement constitutes an exercise of his reasonable business judgment, and that the Settlement Agreement is fair and equitable and in the best interests of the Debtor's estate and its creditors.

24. The Trustee indicated that, if the settlement were not approved, the CFPB Administrative Proceeding would continue at significant expense to the Debtor's estate. The Trustee estimates that the final trial preparation for the Administrative Proceeding would cause the estate to incur legal fees and expenses of approximately $58,000.00. Moreover, the Debtor has no unencumbered assets or cash flow to fund the cost of such litigation.

25. The Trustee also indicated that the potential exposure to the Debtor's estate from an adverse outcome in the Administrative Proceeding could be overwhelming. The CFPB alleged nineteen counts of violations with the maximum penalties at over $4 million dollars. Additionally, the CFPB sought rescission of the Debtor's contracts having an estimated principal balance of over $4 million dollars. Consequently, should the CFPB prevail in the Administrative Proceeding, its claim would dwarf the claims of unsecured trade creditors, and virtually eliminating any dividend to trade creditors.

26. With respect to the merits of the Administrative Proceeding, the Trustee states that presenting a formidable defense would be difficult at best. He notes that the Administrative Law Judge has already denied all the affirmative defenses asserted by the Trustee. The Trustee indicates that there is a substantial risk of an adverse ruling in the Administrative Proceeding.

27. Turning the CFPB Appeal, the Trustee states that if the Settlement Agreement is not approved, the estate will incur additional fees and expenses in connection with that appeal.

      If the CFPB were to succeed on that appeal, reversal of the order approving the 4001(d) Motion would "complicate matters" and cause the estate to incur additional expense and delay.

28.   The Trustee raised similar points with respect to the KYOAG litigation pending in Grayson Circuit Court. The Trustee believes that this action would also increase the fees and expenses to the estate. He also fears any adverse ruling, noting that the KYOAG claims are similar to those asserted by the CFPB in the Administrative Proceeding. Finally, the Trustee believes that if the KYOAG is successful in its litigation, it could also have a claim reducing any distribution to the Debtor's estate.

29.   With respect to PCB, the Trustee states that if the Settlement Agreement is not approved, PCB's super priority claim would consume all of the funds available to the Debtor's estate.

30.   The Trustee also noted the commitment by PCB to make settlement offers to the lot owners, which will give the owners the opportunity to deed their lots back to ARC in full satisfaction of their mortgage note or to receive monetary credits.

31.   Additionally, PCB will provide the necessary funds for the Trustee to make the cash payments to the CFPB and the KYOAG.

32.   With respect to any claims against PCB, the Trustee does not believe the estate has any defenses to PCB's claim under the loan documents or any claim against PCB arising out of the loan transactions between the Debtor and PCB.

33.   Following the submission of the Trustee's proffer, the POA filed a Consent to Trustee's Proffer and Waiver of Cross-Examination wherein the POA consented to the Court's acceptance of the proffer in lieu of oral testimony. Furthermore, the POA waived its right

to cross-examine the Trustee regarding the statements set forth in the proffer or introduce other evidence not already in the record.

34. No other party submitted any evidence, either in favor of or opposed to the Settlement Motion.

## II. Legal Discussion

Generally speaking, the law favors compromise and not litigation. In re Fishell, 47 F.3d 1168 (6th Cir. 1995) (citing In re A & C Props., 784 F.2d 1377 (9th Cir. 1986)). To facilitate this policy, Bankruptcy Rule 9019(a) authorizes a trustee to seek a compromise or settlement of claims, upon motion and after notice and a hearing. Fed. R. Bankruptcy. P. 9019(a). The purpose of such a compromise agreement "is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." In re A & C Props., 784 F.2d 1377, 1380-81 (9th Cir.1986). The bankruptcy court is charged with an affirmative obligation to apprise itself "of all facts necessary to evaluate the settlement and make an 'informed and independent judgment'" as to whether the compromise is fair and equitable. LaSalle Nat'l Bank v. Holland (In re Amer. Reserve Corp.), 841 F.2d 159, 162-63 (7th Cir.1987) (quoting Protective Commonwealth. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)); In re Batt, 488 B.R. 341 (Bankr. W.D. Ky. 2013).

The United States Supreme Court has instructed bankruptcy courts engaged in making such determinations to "form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." TMT Trailer Ferry, Inc., 390 U.S. at 424. From this directive, federal courts have developed four

separate factors a bankruptcy court should consider when determining if a compromise or settlement should be approved. These factors are as follows: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

"Whether a compromise should be accepted or rejected lies within the sound discretion of the Court." In re Planned Systems, Inc., 82 B.R. 919, 921 (Bankr. S.D. Ohio 1988). A court may consider the objections of other creditors or parties in interest, but the objections are "not controlling and will not prevent approval by the Court." In re Carson, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987). The Court must ultimately "canvass the issues in order to determine whether the settlement 'falls below the lowest point in the range of reasonableness.' " Id. at 853 (emphasis added) (quoting Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983)); In re Batt, 488 B.R. 341 (Bankr. W.D. Ky. 2013).

**1.      Probability of Success**

With respect to the first prong to consider, the probability of success on the merits, the Court must estimate both the value of the proposed Settlement Agreement and the likely outcome of litigating the claims proposed to be settled. In re Telesphere Communications, Inc., 179 B.R. 544 (Bankr. N.D. Ill. 1994). In this case, this task is somewhat more difficult considering the diversity of the issues involved and the global nature of the Settlement Agreement. To achieve a successful outcome, the Trustee would have many hurdles to overcome, including, but not limited to, prevailing in the CFPB Appeal, prevailing the KYOAG state court action, and prevailing in the Administrative Proceeding. While these are not insurmountable hurdles, they would not be done easily or cheaply.

Moreover, according tot he Trustee's proffer, the likelihood of prevailing on all of these matters is not great.

The benefits of the Settlement Agreement are incontrovertible. Through the Settlement Agreement, the Debtor's estate will resolve disputes with the KYOAG and the CFPB while at the same time creating a procedure for individual lot owners to resolve their issues directly with PCB, if they elect to do so. As stated in open court, this is an opt-in agreement, which would give individual lot owners the ability, but not the requirement, to deal directly with PCB. Moreover, if the Settlement Motion and the 363 motion are approved, there will be $300,000 cash plus other assets available for general, unsecured creditors. This is much more than could possibly be hoped for absent approval of this settlement. The bankruptcy estate is receiving a cash infusion while at the same time being protected from the extraordinary administrative expense of litigating multiple cases in multiple forums over the course of an undeterminable number of years. The Settlement Agreement will resolve outstanding litigation claims against the Debtor's estate by the CFPB and the KYOAG, which could potentially result in multi-million dollar claims against the Debtor's estate. Moreover, the Settlement Agreement will permit the Trustee to focus his resources on pursuing any remaining assets the bankruptcy estate may possess. Ultimately, the Settlement Agreement will lead to a quicker wind-down of the Chapter 11 case, and —more importantly — a quicker and more certain distribution to creditors with fewer administrative costs.

Based on the Court's review of the record, the likelihood that the Trustee would have succeeded on all of the contested issues is remote at best. In fact, to succeed on all of the claims in all of the actions seems highly improbable to this Court. Thus, this factor weighs in favor of approving the Settlement Motion.

**2.      Difficulties of Collection**

Next, the Court must consider what, if any, difficulties the Trustee would face in collecting any judgment the bankruptcy estate might obtain. For the most part, the Trustee is the defending party in these actions. As such, there would be no collections against the KYOAG or the CFPB. Additionally, the Trustee does not believe that the Debtor's estate has any claims against PCB or ARC and so the likelihood of collection against those parties is unlikely. Considering the Trustee's position in these contested matters, this factor also weighs in favor of approving the Settlement Motion.

**3.      Complexities of the Litigation, Expense and Delay**

The Court must also evaluate the complexity of all litigation between the Parties, including the expense, inconvenience and delay that would result if all of these cases were to proceed to trial. There can be no dispute that the issues being settled, taken as a whole, are somewhat complex. This case is not a "normal" bankruptcy case, when considering the involvement of the regulatory agencies. From the KYOAG claims in the Franklin Circuit Court action to the Administrative Proceeding before the ALJ to the CFPB Appeal, these cases will not be easy or inexpensive to defend. To put it simply, there are a multitude of moving pieces involved in these cases. Adding in the multiple forums adds to the complexity, and also adds the unwanted wrinkle of possible inconsistent results.

With the complexity question, the Court must also consider the expense and delay. Fishell v. Soltow (In re Fishell), 47 F.3d 1168, at *4 (6th Cir. 1995) ("The fact-intensive nature of the dispute also means that any litigation would be time-consuming and expensive."). There can be no question that pursuing these actions further will add expense and delay to this already tortured

bankruptcy estate. The Court must also consider that, but for PCB's financing, the Trustee would not have any resources with which to fund his defenses in these actions. Should the Court not approve this Settlement Agreement, PCB may decide to end its financing of the Trustee's efforts, leaving the bankruptcy estate little hope, if any, of continuing its defense in the other actions. From an expense standpoint, this factor clearly weighs in favor of approving the Settlement Motion.

With respect to the delay, it is entirely possible one, or more, party could appeal any adverse decision. When these probable appeals are factored in, the delay is extended for several more years. Thus, from a delay standpoint, this factor clearly weighs in favor of approving the Settlement Motion.

### 4. Interests of Creditors and Deference to Their Views

Finally, the Court turns to the fourth factor to consider, the interest of the creditors and a proper deference to their reasonable views. As noted above, the POA does not support this Settlement Agreement. Settlements, however, are part and parcel of bankruptcy proceedings. "[I]t is an unusual case in which there is not some litigation that is settled between the representative of the estate and an adverse party." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3rd Cir.1996); In re Batt, 488 B.R. 341 (Bankr. W.D. Ky. 2013). The Trustee is charged with representing the interests of the bankruptcy estate and its creditors. The Trustee's decisions are somewhat protected by the "business judgment rule," which could be better described as a rebuttable presumption rule. See In re Dalen, 259 B.R. 586 (Bankr. W.D. Mich. 2001) (the application of the business judgment rule was addressed with respect to the Rule 9019(a) approval of a settlement). This rule protects a disinterested trustee so long as any decision falls within the range of what an informed businessman would have rationally decided under the circumstances. This Court is always reluctant to disregard

13

the business judgment of trustees with respect to the settlement or compromise of the bankruptcy estate's claims, as it is the trustee who is more knowledgeable of the strengths and weaknesses of their cases.  In re Batt, 488 B.R. 341 (Bankr. W.D. Ky. 2013).

Finally, as stated above, this agreement does not have to be an agreement the Court would enter, but must simply be above the lowest point in the range of reasonableness.  In re Carson, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987).  This Settlement Agreement unquestionably satisfies this requirement.  As already addressed, the economics of this case and the uncertainty of future litigation strongly suggest that the Settlement Agreement is in the best interests of the greater majority of the creditors.

While the Court acknowledges that the POA oppose the Settlement Agreement, despite the Trustee's belief that the Settlement Agreement is in the best interest of the estate as a whole, the Court will note that, other than the POA, no other party has objected to the Settlement Motion.  Along this same line, the Court will also note again, that the UST, which may appear and be heard on any issue in any case or proceeding, did not object to the proposed Settlement Agreement.  11 U.S.C. § 307.

The Court will now address some of the POA's specific objections.  First and foremost, the POA argues the settlement is not a "good deal" for the estate.  The Court disagrees.  No deal will satisfy every party in this case.  This settlement, however, provides the most good for the most parties.  It resolves multiple costly actions in the multiple forums. More importantly, it should provide some return to unsecured creditors.  Failure to approve this settlement would result in no return to creditors.  As such, like the Trustee, the Court believes this is a "good deal" which should be approved.

The POA next contends the settlement benefits some Lot Owners, but not all Lot Owners. This may be true. However, as just stated, no deal would have satisfied all the parties. Settlements do not have to benefit all parties before the Court can approve them. They must instead simply be fair, reasonable, and in the best interest of the estate. This Settlement Agreement is fair, reasonable, and unquestionably in the best interest of the estate. It was reached by arm's length negotiations and only after a considerable amount of time and work was put forth by the Parties.

The POA also takes issue that the Settlement Agreement is silent as to the remaining owners rights with respect to the golf course. While this issue possibly should have been addressed in the settlement, the Court will not disapprove the settlement for its failure to address this singular issue.

With respect to the POA's allegation that the Settlement Agreement allows PCB to retain funds attributable to POA dues, the Court can make no finding with respect to this allegation. The Court cannot find, and the POA has failed to clearly establish, that this settlement awards funds to PCB that it is not entitled to. Moreover, the POA failed to clearly establish the Settlement Agreement would violate the real property covenants.

Finally, with respect to the POA's allegation that the Trustee has not acted in good faith because he has not engaged in meaningful settlement negotiations with the POA, the Court strongly disagrees. The Court finds that the Trustee has acted in good faith throughout this proceeding while trying to maximize assets for the creditors, addressing the regulatory agencies, and negotiating with PCB for additional financing. The fact the Trustee has not reached a settlement with the POA does not sway the Court to alter or deviate from this finding. The Court hopes the Trustee and the POA eventually resolve their own disputes, but it will not deny approval of this Settlement Agreement simply because the Trustee has not yet reached an agreement with the POA.

As stated above, on the whole, bankruptcy court should consider the objections lodged by parties in interest, but these objections are not controlling. In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006). In this case, notwithstanding the objection filed by the POA, the Court will approve the Settlement Motion.

### III. Conclusion

In this Court's informed and independent judgment, the Settlement Agreement is in the best interests of the bankruptcy estate. The Court concludes that the Settlement Agreement is both fair and equitable. Under the totality of the circumstances, the four factors for the Court to consider when ruling upon motions to compromise compel the Court to approve the Settlement Motion. The Settlement Agreement was the product of an arm's-length bargain. The Settlement Agreement will provide for quicker distributions to creditors, at lower risk, and with significantly less administrative expenses. Furthermore, most creditors, support the Settlement Motion, or, more accurately, did not file an objection to the Settlement Motion. In this Court's opinion, the benefits to this bankruptcy estate from the Settlement Agreement are well above the lowest point of reasonableness, and the Settlement Agreement conforms to the general principle that settlements are favored in bankruptcy proceedings. The Court finds that Trustee has exercised sound business judgment and will, accordingly, approve the Settlement Motion. The POA's objection is overruled. The Court will enter an Order this same date in accordance with the holding of this Memorandum.

Alan C. Stout
United States Bankruptcy Judge
Dated: November 13, 2013

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE: )
3D Resorts-Bluegrass, LLC, ) Case No. 11-41599-ACS
          Debtor )
 ) Chapter 11
_____ )

## ORDER

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference,

It is hereby **ORDERED** that the Chapter 11 Trustee's Motion for Approval of Compromise and Settlement Pursuant to Bankruptcy Rule 9019 is **APPROVED.**

It is further **ORDERED** that the POA's Objection is **OVERRULED.**

It is further **ORDERED** that the Agreement, in substantially the form attached to the Motion as Exhibit A, is approved, and the terms of the Agreement are hereby incorporated into this Order.

It is further **ORDERED** that the Trustee is authorized and directed to fully perform any and all obligations consistent with the Agreement, and under the deadlines set forth in the Agreement (including the "Effective Date" as defined in the Agreement), to execute, deliver, and implement any and all instruments, documents, and papers, including the Agreement, and to take any and all actions reasonably necessary or appropriate to consummate the settlement approved herein and to perform any and all obligations contemplated hereunder.

It is further **ORDERED** that the Debtor, PCB, ARC, the CFPB, and the KYOAG are hereby directed to fully perform any and all obligations consistent with the Agreement, and under the deadlines set forth in the Agreement (including the "Effective Date" as defined in the Agreement), to execute, deliver, and implement any and all instruments, documents, and papers, including the

Agreement, and to take any and all actions reasonably necessary or appropriate to consummate the settlement approved herein and to perform any and all obligations contemplated hereunder.

It is further **ORDERED** that this Order is final and shall not be stayed by Fed. R. Bankr. P. 6004(h) or any other rule or statute.

It is further **ORDERED** that this Court retains exclusive jurisdiction with respect to all matters arising from, arising in, or related to the Agreement or to implementation of this Order.

It is further **ORDERED** that, notwithstanding anything else in this Order or the Agreement, the entry of this Order shall not affect the ability of the Green Farm Property Owners Association, Inc. or any real party-in-interest to assert any right under, or claim for equitable relief from, and/or reformation, modification or cancellation of, any of the covenants, declarations or bylaws, or related documents, relating to the Green Farm Resort, including, but not limited to, the Declaration Regarding the Establishment Of Green Farm Property Owners Association, Inc., and the Declarations of Reservations, Covenants, Restrictions and Conditions for the Green Farm Resort.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: November 13, 2013